1
2
3
4
5
6            UNITED STATES DISTRICT COURT

7            DISTRICT OF NEVADA

8                         * * *

9  UNITED STATES OF AMERICA,        )
                                     )
10           Plaintiff,              )        2:05-CR-0004 RLH-(RJJ)
                                     )
11                                   )        REPORT &   RECOMMENDATION
   vs.                               )            OF UNITED STATES
12                                   )           MAGISTRATE JUDGE
                                     )        _____
13                                   )        (Defendant's Motions to Suppress
                                     )         Evidence for Fourth Amendment
   KENNETH DREW,                     )        Violation (#35)
14                                   )
                                     )
15           Defendant.              )
   _____)

16          This matter came before the Court on a hearing on Defendant Kenneth Drew's Motion to

17  Suppress Evidence for Fourth Amendment Violation (#35).  The Court has considered the Motion

18  (#35), the Government's Opposition (#36), the Defendant's Response (#37) and the testimony and

19  evidence presented at the evidentiary hearing.   The Court has also considered Defendant's

20  Supplemental Briefing (#39) and Addendum to Supplemental Briefing (#41), as well as the

21  Government's Supplemental Briefing (#43).

22                                **BACKGROUND**

23          On January 11, 2004, Deputy W. Garza of the Lincoln County Sheriff's Department

24  received a tip from a confidential informant that the defendant, Kenneth Drew, was in possession

25  of stolen property taken during a recent burglary.  The confidential informant told Deputy Garza that

26  Drew had invited the informant into his home, where the defendant proceeded to show him a locked

27  room containing, amongst other things, some cameras, a clarinet and a saxophone.    Prior to

28  contacting the police, the confidential informant stated that he had contacted the victim of a recent

burglary, Carma Eizman, and the victim's daughter, and obtained a verbal description of the clarinet and saxophone stolen from their home. These descriptions matched the clarinet and saxophone observed in Drew's locked room. In addition to this, the victim described in detail a knife that was stolen from the residence. The knife, a straight blade Remington hunting knife with a light tan sheath with a velcro closure, matched a knife given to the informant by Drew, and subsequently turned over to the police. On January 13, 2004, Deputy Garza contacted the burglary victim with whom the confidential informant had spoken, and received a verbal description of the stolen knife, which matched the knife provided by the informant.

In addition to the tip provided by the confidential informant, investigators learned of another residential burglary implicating defendant Drew. John Van Houton, the victim of a November 2003, burglary informed the police, via a note provided on December 29, 2003, that an individual named Joe Delmue had informed him that the defendant had tried to sell Delmue a camera matching the description of the one stolen from the victim's residence. Upon speaking with this victim, police were informed that the camera had been returned to the victim by a Darrin Zaro, a known associate of the defendant. Although initially Mr. Zaro had attempted to extort money from the victim as a reward in return for the camera, he ultimately returned the camera without receiving any money.

On January 14, 2004, after receiving the information from the confidential informant and speaking with burglary victims Eizman and Van Houton, Officer Garza obtained a search warrant for the defendant's residence and executed it the same day. The search of the residence revealed a locked room from which police seized a clarinet, Winchester rifle and a .12 gauge shotgun, among other items. The firearms matched descriptions of items stolen during a residential burglary investigated by Sgt. Kerry Lee on January 14, 2004. The defendant was apprehended outside his residence as he attempted to flea from police. During his attempt to run, the police observed the defendant throw what appeared to be a small black case. The case was found shortly after Drew was taken into custody and contained a syringe, a hemostat and what appeared to be a vile of methamphetamine.

Upon his arrest, the defendant was read his <u>Miranda</u> rights and placed in a police car, from which he requested to speak to the police. The defendant was told that he would have a chance to

1   talk with police later, as the officers were occupied with searching Drew's residence.  The defendant

2   did not speak with officers until his interrogation the next day, January 15, 2004.  At the beginning

3   of the interrogation Drew was reminded that he had previously been read his rights and was asked

4   if he wanted them re-read to him and if he understood his rights.  Drew waived a second reading of

5   his <u>Miranda</u> rights and acknowledged that he understood his rights.  During the video-taped

6   interrogation the defendant confessed to the burglary of several homes in Caliente.   On January 1,

7   2005, Kenneth Drew was  indicted by a federal grand jury and charged with violating 18 U.S.C.

8   Section 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.

9        The defendant moves the Court to suppress all evidence seized as a result of the search

10  warrant as well as any statements made during his custodial interrogations.  Drew claims that the

11  search warrant lacked the necessary probable cause and was issued based on misleading information

12  contained in the affidavit.  Furthermore, the defendant argues that he did not voluntarily waive his

13  <u>Miranda</u> rights prior to his custodial interrogation, making the statements obtained during the

14  interrogation inadmissible.

15                                          **DISCUSSION**

16  **I.    <u>Franks</u> Hearing**

17        "A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying

18  a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit

19  contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit

20  cannot support a finding of probable cause without the allegedly false information."  <u>United States</u>

21  <u>v. Reeve</u>, 210 F.3d 1041, 1044 (9th Cir. 2000).  In requesting a <u>Franks</u> hearing, the defendant must

22  present to the Court "allegations of deliberate falsehood or of reckless disregard for the truth, and

23  those allegations must be accompanied by an offer of proof."  <u>Franks v. Delaware</u>, 438 U.S. 154, 171

24  1978).  Where a judge has issued a warrant on misleading information contained in the affidavit,

25  which was known to be false or should have been known to be false but for reckless disregard,

26  suppression is appropriate.   <u>United States v. Leon</u>, 468 F.897, 923 (1984).  When reviewing an

27  issuing court's determination of probable cause, it need only be found that a "substantial basis"

28  existed  for a finding of probable cause. <u>United States v. Vesikuru</u>, 314 F.3d 1116, 1122 (9th Cir.

1    2002).

2         The defendant argues that a <u>Franks</u> hearing is necessary because the affidavit for search

3    warrant: 1) failed to inform the issuing judge about Darrin Zaro's attempt to extort money from

4    burglary victim Van Houton, and 2) included information regarding footprints discovered at burglary

5    scenes which were never tied to the defendant.  According to the Drew, paragraphs 11-14 of the

6    affidavit contain information regarding the burglary of the camera, the note from Van Houton to

7    police, and the return of the camera by Zaro, but omits the fact that  Zaro attempted to extort reward

8    money from the victim in exchange for the return of the camera.  Drew asserts that the reckless, if

9    not intentional, failure of the affidavit to include material information regarding Zaro's credibility

10   undermines a finding of probable cause.  In addition to this omission, Drew argues that the inclusion

11   of information in paragraphs 15 and 16 of the affidavit regarding the discovery of footprints at the

12   scene of the two of the burglaries is misleading as no connection is made between the defendant and

13   the footprints.

14        Despite the arguments presented by the defendant, and the Government's concession that the

15   footprint information in paragraphs 15 and 16 do not contribute to a probable cause determination,

16   the Court finds the defendant fails to meet the threshold necessary for a <u>Franks</u> hearing.  Drew does

17   not adequately set forth "allegations of deliberate falsehood or of reckless disregard for the truth"

18   sufficient to find that the affidavit cannot support a finding of probable cause.  <u>Franks v. Delaware</u>,

19   438 U.S. 154, 171 1978).   Sufficient information exists in paragraphs 1-10, 17-18 of the affidavit

20   regarding the tip provided by the confidential informant, and the verification thereof, to establish

21   probable cause necessary to issue the search warrant.  The defendant's motion to suppress evidence

22   obtained as a result of the search warrant is denied.

23   **II.    Waiver of Miranda**

24         "A heavy burden rests on the government to demonstrate that the defendant knowingly and

25   intelligently waived his privilege against self-incrimination and his right to retained or appoint

26   counsel." <u>Miranda v. Arizona</u>, 384 U.S. 436, 475 (1966); see also <u>Colorado v. Connelly</u>, 479 U.S.

27   157, 165 (1986).   To prove valid waiver, the government must show that (1) the waiver was

28   voluntarily made and not the product of coercion, and (2) that at the time of the waiver the defendant

1   understood both the nature of the right being waived and the consequence of the waiver. Moran v.

2   Burbine, 475 U.S. 412, 421 (1986). In determining if the waiver was the voluntary product of a

3   rational and free will, the court must look at the totality of the circumstances. Id.; United States v.

4   Orso, 266, F.3d 1030, 1039 (9th Cir. 2001). "A defendant's mental state alone does not make a

5   statement involuntary." Untied States v. Turner, 926 F.2d 883, 888 (9th Cir. 1991) citing Connelly,

6   479 U.S. at 169-171.

7        When considering if a defendant has been coerced into waving his rights, the court may

8   consider physical or psychological coercion or the use of improper inducement in effort to overbear

9   the suspect's will. United States v. Coleman, 208 F.3d 786, 791 (9th Cir. 2000). The inducement

10  to cooperate with the government by suggesting that the cooperation will have a positive effect on

11  potential future sentencing of the defendant is not improper coercion. Williams v. Woodford. 384

12  F.3d 567, 595 (9th Cir. 2004); Coleman 208 F.3d at 791 (assurance by agents that they will tell the

13  prosecutor to give "little or not time" to defendant is not improper coercion). The use of promises

14  of leniency in conjunction with threats or other forms of coercion, however, does qualify as

15  improper coercion and any waiver made under these circumstances is invalid. Williams at 595.

16       In the case at hand, the defendant argues that his waiver of Miranda rights was involuntarily

17  made as, 1) it was the  result of coercion by the officers, and 2) at the time of the waiver he was

18  under the influence of narcotics which made him incapable of comprehending the rights he was

19  waiving and the consequence thereof. An analysis of both arguments in light of a review of the

20  video-taped interrogation of the defendant reveals that Drew was not coerced and appeared

21  physically and mentally capable of understanding the nature of his rights and the consequence of

22  waiver. See Government's Opposition #36, Exhibits D ("Tape 1") & E ("Tape 2"), videotaped

23  interview of defendant.

24       **A.    Coercion**

25       The defendant argues that he was coerced into waiving his rights and making a statement of

26  confession out of concern for the safety of his wife and children. Drew states that several statements

27  were made in attempts to coerce his cooperation, including being told that if he cooperated he would

28  not be charged as a habitual criminal and that his cooperation could be the difference in a 20 year

1    sentence or life.  Tape 2 at 6:30 and 8:00.  Drew further points to a reference made by Sgt. Cowley

2    that the sergeant had visited the district attorney and was told  Drew was looking at a habitual charge,

3    and that he should come clean so as to avoid the charge. Tape 2 at 22:20.  Drew argues that his

4    waiver should be found involuntary, as in the case of United States v. Tingle, 358 F.2d 1332 (9th Cir.

5    1981). In Tingle, defendant's waiver was found to be involuntary due to the agent's acts of coercion,

6    specifically stating the maximum sentences possible for the alleged crime, that she would never see

7    her two-year old daughter again, and that the prosecutor would be informed that she was stubborn

8    and uncooperative.

9         A review of defendant Drew's taped interview  reveals that while statements by the sergeants

10   were made to induce cooperation and confession, there were no threats made in conjunction with

11   promises of leniency that would invalidate Drew's statement. Williams at 595.  In fact, the

12   statements were made in light of Drew's comments that in his prior conviction he never received any

13   benefit from cooperating with police, specifically that his cooperation did not lead to a reduced

14   sentence.  Though the sergeants did make statements about possibly  recommending a lighter

15   sentence to the district attorney, they were clear in their position that no promises could be provided

16   to  Drew as to his ultimate sentence in exchange for his cooperation.  Only after it became apparent

17   that  his offer to cooperate by  leading the police to other individuals of interest would not result in

18   a deal for a reduction in charges or sentence,  did Drew confess. And unlike in Tingle, no comments

19   were made that the prosecutor would be informed that he was uncooperative nor was he threatened

20   with never seeing his children again as a result of his failure to cooperate.  Rather, conversation

21   regarding Drew's family expressed more concern to return him to his family by means of the shortest

22   sentence than keeping him from them as a form of punishment.   Therefore, the court finds the

23   defendant was not coerced into a waiver of his Miranda rights.

24        **B.    Drug Use**

25        The defendant also claims there is evidence  that he was under the influence of narcotics at

26   the time of his interrogation,  and therefore the officers should have known that he could not

27   voluntarily waive his rights.  As evidence of his impairment, Drew points to comments he made

28   during the interview that his nerves were shot, he needed a drink of water, that he hadn't slept in days

1    and that he needed help (referencing his drug problem).  Tape 1 at 15:50; Tape 2 at 11:00, 15:10.

2    Drew also argues that statements by Sgt. Lee that "meth will make you do crazy stuff" and that meth

3    will " make you do bad things" is evidence acknowledging  Drew's condition. Tape 2 at 30:40 and

4    42:10.  In further support of this argument, the defendant points to the fact that the small black case

5    he discarded while attempting to run from the police was found to contain methamphetamine.

6          In United States v. Rodriguez-Rodriguez, 364 F.3d 1142, 1146 (9th Cir. 2004) the court held

7    after a review of the evidence that a defendant suffering withdrawal from heroin was able to

8    voluntarily and intelligently waive his Miranda rights.  As in Rodriguez, a review of the evidence

9    in this case shows that Drew was capable of voluntary waiver and was not in fact impaired so as to

10   prevent his knowing and intelligent consent to questioning.  When viewed  in context, the statements

11   Drew cites as evidence of physical impairment appear to be normal signs of nervousness exhibited

12   upon detention and questioning by the police.  When referencing "shot nerves" the defendant and

13   sergeants are discussing his ability to remember details about the burglaries and his  activities over

14   the previous days.  When stating that he hadn't slept in days, the reference was made to his sleep

15   deprivation prior to being taken into custody and appeared to be a reference to excuse his

16   nervousness.  When stating that his mouth was dry and he needed a drink of water, Drew was given

17   water after which he did not mention further physical concerns.  Any physical fidgeting displayed

18   by the defendant appears in anticipation of questioning or when presented with specific evidence of

19   his involvement in the burglary.

20          The  acknowledgment of Drew's methamphetamine  use by the officer was done in the

21   context of burglary as a means of supporting drug use or burglary committed while under the

22   influence.  This acknowledgment  does not demonstrate that the defendant was under the influence

23   of drugs during his interrogation.  The fact that Drew was in possession of methamphetamine prior

24   to his arrest also does not imply that he was under the influence of narcotics, or withdrawal from

25   narcotics. All of these factors, in conjunction with the fact that the defendant was questioned a day

26   after being arrested and  was facing possible charges as a habitual criminal, indicate that the

27   defendant was not impaired and that his waiver was voluntary.  Therefore, his statements should not

28   be suppressed..

1

2                                **RECOMMENDATION**

3          Based on the foregoing and good cause appearing therefore,

4          IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

5   Defendant's Motions to Suppress (#35) be **DENIED**.

6

7                                    **NOTICE**

8          Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in

9   writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that

10  the courts of appeal may determine that an appeal has been waived due to the failure to file

11  objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985).  This circuit has also

12  held that (1) failure to file objections within the specified time and (2) failure to properly address and

13  brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

14  factual issues from the order of the District Court.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.

15  1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

16         DATED this  25th  day of May, 2006.

17

18

19

20         _____

21         ROBERT J. JOHNSTON
           United States Magistrate Judge

22

23

24

25

26

27

28